Thank you, Your Honor. My name is Vicki Buchanan. I am representing Christian Castillo. I'd like to reserve two minutes. Christian Castillo is Hispanic. He is serving 134 years to life in prison, having been convicted of robbery. He was convicted by a jury from which the prosecution systematically removed the Hispanic jurors. The reasons for removal are facially racial in nature or a pretext for racial discrimination. Rather than focus on the merits of Mr. Castillo's claim, the government is focusing on an alleged procedural default. The issue before the court is whether or not a Batson violation has occurred, but I'll address briefly the procedural default. In order to provide an affirmative defense of an adequate State procedural rule, in this case, the Respondent pled a generic procedural default issue. They cited the Clark case, right? They didn't plead that. They cited it in their Memorandum of Points and Authorities. But in their actual pleadings, the pleading, the answer, they did not cite to Clark. It simply said there was a procedural default. But it did cite it later on? In the Memorandum of Points and Authorities, yes. But the court found, the district court found that that was insufficient to put it in the Memorandum of Points and Authorities, specifically found that it needed to be put in the actual pleading. Mr. Castillo responded to the actual pleading and responded that he denied the allegations of the defense. Therefore, as I read Lamarck, King versus Lamarck, that put the ultimate burden back to the government to show that there has been an adequate, that the law has become adequate since that time. In other words, that it's firmly established and consistently applied since this Court ruled in Morales that the rule, the substantial delay rule, had not been consistently applied at that point. The memorandum that the government relies on was filed in support of the Traverse? It was, the one that the government relies on was filed in support of its answer. Its answer to the? To the petition in the district court. Okay. The government has not met its ultimate burden of proving that it was firmly established and consistently implied, and I doubt if they could as of this date on the substantial delay rule. Therefore, this Court should reach the merits of Mr. Castillo's claim. Did Mr. Castillo respond to the government's allegation that it's clearly established here of a procedural default under Clark? Not in his, not in his Traverse. What he focused on in his Traverse, he understood it appears that he understood what the government was talking about, was a default under 2554, in other words, the statute of limitations. So he addressed most specifically the statute of limitations under that particular rule. And then he did mention that he is substantial that his delay was, and he gave the reasons again for his delay, in filing his habeas petition one month after the court of appeal ruled in his case, or his petition for certitude. The California Supreme Court had been denied. He sure didn't raise it on direct appeal, did he? No. His Batson issue? No, he did not raise it on his direct appeal. That was not mentioned in his direct appeal. It was raised for the first time on habeas. But as to the merits of his appeal, if you look at step two of the Batson analysis, where the prosecution is to give a race-neutral justification, in this particular case, at step two, when talking about juror, Ms. Gaff, the prosecution said, well, I dismissed her because I don't trust people raised in another legal system, whether they be Latin or whether they be Asian. Now, that's a strange use of terms when you're talking about a legal system. We don't refer to Latin legal systems. We don't refer to Asian legal systems. And we don't refer to Caucasian legal systems. It's clear that at that point in time, he was talking about race when he was referring to the reasons for dismissing Ms. Gaff. Once you get beyond that particular ---- What's the standard of review here? What did the state court, what did the trial court decide? The trial court is the only one that decided on this issue because it was not raised on direct appeal. And all the trial court said was that they found no discriminatory purpose. That was the entire ruling of the trial court, that there was no discriminatory purpose. If you're talking about under the AEDPA, which standard of review applies, I believe the Lamarck decision makes it clear that it would be under 2254D2, which is the unreasonable determination of the facts in light of the evidence presented, because the evidence that is relied on in this particular case is the evidence from the trial court. It is the actual I believe in this particular case, however, even if it was under E1, that we could meet the clear and convincing standard based on the excuses given by the prosecution for dismissing the five Hispanic jurors in this particular case. All five that were struck perimpherally were of Hispanic origin? Yes. And ---- Well, there were more ---- there were a few other jurors that were struck that were not Hispanic, but ---- Those are the ones you're focusing on. I'm focusing on the five specific ones that were struck because of their ---- Do I understand correctly that at least as to one of the five, no reason was given at all? No. Or do I have that wrong? You have that wrong. Okay. Ms. Gaff, the reason for Ms. Gaff was because she was raised in a different legal system. She'd been in the United States for 30 years and had served on a jury before. Two of the other jurors in the pool. You know more about those two jurors than you do about Mr. Nickel or Mr. Beal. All we know about Mr. Nickel is he was ---- he lived in Huntington Beach and worked for the Parks Department. All you know about Mr. Beal is he was a post office worker who was arrested for being drunk in public once in his life. You know a lot about Ms. Martinez. She works for Aetna as a claims adjuster ---- not as an adjuster. And as far as Mrs. Gaona goes, we know that she worked for 15 years for the Department of Motor Vehicles. Her family's in law enforcement. She has a social life because she visited some of the restaurants here. We know nothing. Compare her to Mr. Beal who was left on the jury. We know nothing about him. We know nothing about Mr. Nickels as compared to Ms. Martinez. Whose burden was it at the trial level to show that Mr. Beal or Mr. Nickels was a comparator here? Well, at that point in time, a comparative analysis was not done in the California state courts. Well, isn't it up to the petitioner to show that Beal and Nickels were similarly situated to Martinez in order to do it? And you can't really do that now because we don't know how old ---- we don't even know how old Nickels was. Well, in the case of U.S. v. Chinchilla, they didn't know the age of one of the jurors, so presumed it to be. They left that excuse off because that particular situation was unknown in United States v. Chinchilla. Was that on direct appeal or was that a ---- U.S. v. Chinchilla, that was a direct appeal. Okay. Isn't the standard a little different here? Right. But as of the time in 2001 when the jury was being ---- when the voir dire was being conducted, California did not apply the comparative analysis, and it wasn't until recently in Kessler that this Court has said that they will do the comparative analysis for the first time on review. And the trial judge should have known that sitting there at the time. Of course, one of the problems in trying for us to reach this is that this was never raised on direct appeal where the California courts could have taken a look at it and if it wasn't appropriate, they could have sent it back. But, you know, we're picking it up out of the blue. Yeah. Well, the issue that this Court raised was the Batson issue, but Mr. Castillo did raise the fact that there was ineffective assistance of appellate counsel for failing to raise this particular issue at the court of appeal because ---- That's not before us now. No, it is not. That is not the issue that this Court has to be briefed. You wanted to save a little time for rebuttal? Yes, I did. Okay. Thank you. Thank you for your argument, counsel. We'll hear from the warden at this time. Ms. Jacobson. Good morning. May it please the Court. Lisa Jacobson, Deputy Attorney General for the Respondent. The district court's order denying habeas relief should be affirmed because the state courts reasonably applied the second and third prong of the Batson test in denying Castillo's equal protection challenge. Before turning to the merits of the claim, I'd briefly like to discuss the procedural bar in response to counsel's comments. We maintain that we adequately pled it under Step 1 of Bennett, but we recognize that this Court is bound by King, and for that reason, we'd like to focus on the merits here. The exclusion of the woman from another country, was it Panama? Yes, Your Honor. And I think when you asked earlier ---- Isn't counsel right that the description is a bit strange that the prosecutor gave? Well, what happened was while they ---- the defense counsel named four particular jurors, and the juror from Panama wasn't one of those four, and that's why it looks in the record like trial counsel only gave explanations for four of the jurors. What happened was when the trial court ---- when the prosecutor was describing why he dismissed Juror Gayona, the trial court incorrectly stated that she was from Panama. I'm concerned about people who are raised in foreign legal systems, be it Latin or Asian, because I'm concerned about whether they would adhere to the rules of our system. And we believe that that is facially race neutral. While the prosecutor referred to Latin and Asian systems, it's clear here that that was illustrative rather than an exhaustive list. There's some very different court systems in the Latin and Asian world, aren't there? Yes. And so we believe that not only was it racially face neutral but rational. It was not based on his belief that ---- or based on the fact that she was Hispanic, but it was based on the fact that these are different legal systems. She'd been in this country, what, 30 years or something like that? Yes, Your Honor. And she had served on a jury in the past, but the fact that she'd been here a long time and had success ---- first off, the fact that she'd been here a long time doesn't render the prosecutor's reason either discriminatory on its face or discriminatory. What if they're suspicious? Excuse me? What if the, quote, race neutral reasons given appear suspicious? Is it ---- well, then we go to step three of the Batson analysis, and the question is whether it was reasonable for the trial court to credit the prosecutor's explanation. And we believe here it was reasonable. This is ---- you have the same problem when you excuse people because you are concerned about whether or not they'll follow the Spanish interpreter rather than their own understanding of the Spanish language in bilingual cases. There's a chance that ---- I think you have to look closely at those because there's a chance that people could abuse those, but here the trial court made a credibility determination, and the record as we have it supports it because the prosecutor dismissed ---- What was Ms. ---- What did Ms. Gayona do for a living? Ms. Gayona worked at the DMV, and the prosecutor stated that he didn't believe the DMV was a particularly well-run organization, and he dismissed her for that reason and Juror Antevaros. That sounds like a kind of strange reason, too, doesn't it, because it's in a government agency? It is a government agency, but that may be from what the prosecutor's experiences were at the DMV. He felt that it wasn't a well-run organization and, therefore, that she might not be a well ---- a good juror. Were any Latinos left on this jury? Yes, Your Honor. We know that at least two were left on the jury because at the end of the case, the prosecutor said, I just want to state for the record in light of the Batson-Wheeler challenge that there were Hispanics on the jury, including one Hispanic woman. So from that, we know that there were at least two Hispanics on the case. Does that mean there's a Hispanic man and a Hispanic woman? I'm not sure. Okay. It appears, if you go by last names, it appears that somebody named Mr. Sanchez was on the jury. He was, I believe, juror number five. Redaction wasn't so good here. Okay. Could you give us an example of a purportedly neutral reason for a peremptory strike that a reviewing court should not accept? A race-neutral reason? Yeah. Give us an example of a purportedly race-neutral explanation for a strike that a reviewing court should find inadequate, suspect, et cetera. The ones I can think of from the cases occur usually when the prosecutor gives a reason that's wrong, a reason that's not supported by the record, or like in the case of Kesser, where they give some that are not racially neutral. Well, those types of reasons, the facially neutral ones in those cases, if they're not supported by the record, then those should not be credited. But other than that, if they're facially race-neutral, I can't think of an example where you can just discredit. A reviewing court shouldn't be suspicious of someone who lumps all Latin and all Asian judicial systems together? I believe that the prosecutor here was just using those as illustrations of just foreign legal systems, period, and I think that that's reasonable, because he was concerned that she might default to what she grew up with, default to those rules, rather than following the court's instructions, and it wasn't about race. There are some Latin cultures where criminal defendants are presumed guilty and have the burden to prove themselves innocent. Maybe that would have been beneficial to the prosecutor then, to keep a juror like that. But the prosecutor was just concerned about whether she'd adhere to the rules of our system based on being raised in a foreign legal system. Presumably, the prosecutor would have the same concerns with somebody who was raised in Russia. Maybe not Canada. I'm not as familiar with, I believe, their common law, but maybe somebody born in Russia or in different parts of Europe or raised in different parts of Europe as well. France? Perhaps. Of course, a lot of those civil law countries don't use juries at all, do they? Yes. Yes, Your Honor. Okay. Thank you. Unless there's any... I don't see any. Thank you for coming in today. Rebuttal? Ms. Gaff, who was from the different legal system, had served on a jury before and reached a guilty verdict, and I believe it was a robbery as well. Might have been a murder case. I just want to focus on, just remind the Court, Mr. Castillo is spending 134 years to life in prison, and it's questionable whether he was judged and convicted by a jury of his peers. I believe he needs to be convicted by a jury of his peers if he's going to be serving a life sentence. Thank you. Is it any factor that some Hispanics were left on the jury? I don't know whether they were on the jury after the Batson-Wheeler case came forward. I know that the case law says that that is an element, but it is not persuasive. It does not take away from one single discrimination. If there's one single discrimination in a Batson-Wheeler case, that's all that it takes for a Batson reversal. Okay. Thank you for your argument. Thank both sides for their argument. The case argued will be submitted for decision.
judges: T.G. Nelson, Siler, Hawkins